UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 04-40019-FDS
)
ALEXIS MORALES )
)
Defendant. )

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, through the undersigned
attorneys, files this response to Defendant Alexis Morales'
motion to suppress evidence. Morales is charged in a one-count
indictment with Possession of more than 5 grams of crack cocaine
with intent to distribute, in violation of 21 U.S.C. § 841.

The case began with a car stop. A Worcester police officer
had seen in the rear seat of the car as it drove past a person
for whom there was an arrest warrant, Raul Aponte. Police pulled
up behind the car, which had already stopped, and approached.
They ordered Defendant, the front passenger, from the car,
conducted a pat-down for weapons and then told Defendant to stand
a distance away so that officers could arrest Aponte. In the
process of removing Aponte, police saw crack cocaine in plain
view and seized it. After, all three occupants of the car were
hand-cuffed. Defendant admitted the crack cocaine was his.

Defendant filed this motion to suppress. He claims that he
was unlawfully frisked and detained, that the crack cocaine was

1

unlawfully seized and his statement was unlawfully obtained.

This motion should be denied.  The police had the right to stop the car and arrest Aponte; they had the right to order Defendant from the car until Aponte could be arrested and, based upon knowledge of Defendant's criminal history, gang affiliation, and furtive movements to conduct a pat-down for weapons (although this conduct did not result in any evidence).  The crack cocaine, which Defendant lacks standing to suppress, was in any case, in plain view; and Defendant's admission that it was his was spontaneous, later repeated after Defendant had been Mirandized. The motion should be denied without a hearing.

## FACTS

On June 7, 2004, at approximately 7:20 p.m., Worcester Police Department ("WPD") Officers Carmody, Panarello, Vo and Lopez were on routine motor patrol on Laurel Street, a two-way street that winds through a dense cluster of multifamily dwellings that comprise Plumley Village.[1]  There were a number of people outside and the unmarked police car was traveling slowly. The police officers were dressed in blue tee shirts that had the WPD emblem on the front and the word "Police" on the back.  In addition, the officers had their badges displayed.

---

[1]    This statement is based largely upon the affidavit of DEA Special Agent Michael Boyle in support of a federal warrant to arrest Morales on a criminal complaint and the Affidavit, submitted herewith, of Officer James Carmody.

2

At that time, Officer Carmody, who was seated behind the driver, saw a white Mercury Mountaineer (hereafter, the "Mountaineer"), drive slowly by in the opposite direction. Through the windshield of the Mountaineer, Carmody saw in the rear seat Raul Aponte for whom there was an outstanding arrest warrant for assault and battery.

Carmody instructed the driver of the police car to turn around, that Aponte was in the Mountaineer. Carmody's intention was to arrest Aponte. Carmody had also seen in the front passenger seat of the Mountaineer the Defendant, Alexis Morales. Carmody was a member of the WPD Gang Unit and had dealt with Defendant in that capacity. Defendant had admitted to Carmody to being a member of a gang known as Plumley Village East, whose territory encompassed the area of the stop. In addition, Carmody had participated in arrests of Defendant and was aware that Defendant had been charged with weapons and drug offenses.

When the police car turned around, the Mountaineer had already pulled to the side of the Laurel Street curb, near 29 Laurel Street. The police car stopped and the officers approached. As Carmody approached, he saw Morales make furtive movements with the rear passenger, Aponte. For the safety of the officers, Officer Lopez removed Morales from the Mountaineer and conducted a pat-down for weapons. No weapons or contraband were found on Defendant. Lopez then ordered Defendant to stand "over

3

there," a distance away.  Defendant was not handcuffed, guarded or told that he was under arrest.

Then Lopez and Carmody ordered Aponte to show his hands. Aponte refused and leaned away from the officers.  Officers Lopez and Carmody removed Aponte from the Mountaineer.  After removing Aponte, Officer Lopez saw in the pocket on the back of the front seat a clear sandwich baggie, knotted at the top which contained multiple knot-tied corners of sandwich baggies.  Lopez removed the sandwich baggie.  The smaller baggies contained off-white chunks which Officer Carmody recognized, based on his training and experience, as resembling crack cocaine.

After Officer Lopez removed the package from the Mountaineer, the officers arrested Defendant and the driver of the Mountaineer, Darren Andrews.  They, along with Aponte, were hand-cuffed, seated on the curb and advised that they were under arrest.  Shortly after, Andrews began to protest, saying, in substance, "Yo, I'm not taking this."  As Andrews protested, Defendant stated, "that shit is mine."  Defendant was then told that no one would be released unless Defendant gave a written statement admitting his ownership and possession of the crack cocaine.  Defendant agreed.

Morales was taken to WPD headquarters. He was given Miranda warnings which are memorialized on a card, a photocopy of which is annexed to the Affidavit of Officer Carmody.  Thereafter,

4

Morales provided responses to questions, including the following, which are part of an signed statement also annexed to Carmody's Affidavit:

Question: Was crack cocaine found in the vehicle?

MORALES:  Yes.

Question: Did the crack cocaine belong to you?

MORALES:  Yes.

A chemist determined that the substance recovered was cocaine in the free base form, with a net weight of 27.92 grams.

## ARGUMENT

The motion to suppress the crack cocaine should be denied without a hearing.  The actions of the police were reasonable under the circumstances and did not improperly intrude on Defendant's Fourth and Fifth Amendment rights.

## I.    The Stop of the Car And Dealings with Defendant Were Proper.

Because Carmody saw Aponte, for whom there was an arrest warrant for assault and battery, in the Mountaineer, the stop of the Mountaineer to effect Aponte's arrest was reasonable. Moreover, the officers were permitted to remove the other occupants of the Mountaineer for as long as was necessary to make the arrest.  Although it yielded no evidence, the pat-down of Defendant was reasonable under the circumstances.  Defendant was not detained until there was probable cause for his arrest.

5

## A.   **The warrantless stop of the car was proper.**

Absent a warrant, the police may intrude on a passenger's Fourth Amendment right of freedom of movement "where a police officer observes unusual conduct which leads him reasonably to conclude in light of experience that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). In such circumstances, the police may stop a car briefly and make reasonable inquiries of the suspect designed to confirm or dispel suspicion. United States v. Woodrum, 202 F.3d 1, 5 (1st Cir. 2000)(taxi cab). To justify a stop under the reasonable suspicion standard, the government must show "specific and articulable facts which, reasonably warrant that intrusion." Terry, 392 U.S. at 21. The officer making the stop must be able to articulate something more than an unparticularized and inchoate suspicion or hunch linking an individual to criminal activity. Woodrum, 202 F.3d at 6-7 (citations omitted).

The facts surrounding the stop in this case easily meet this standard.[2] Officers approached the Mountaineer it because of a specific and articulable fact of criminal activity: Officer Carmody's first-hand observation of Aponte, for whom Carmody knew there was an arrest warrant, in the rear seat of the Mountaineer.

---

[2]   We refer to the police conduct as a stop because the police approached the Mountaineer and would not have permitted it to be driven away until after Aponte was arrested. However, factually, the Mountaineer had come to a stop by the curb before police parked behind it and approached.

6

(See Carmody Aff.).  This observation permitted the officers to take appropriate steps to arrest Aponte.  Since Aponte was in the Mountaineer, the first such step in effecting Aponte's arrest was to stop the Mountaineer and insure that Aponte was not driven away in it.[3]  Indeed, Defendant concedes that the decision to stop an car would be reasonable where (as here) the police have probable cause to believe an occupant has an open warrant.  See Def. Memo. at 2.

Defendant challenges Officer Carmody's credibility.  In a bid for a hearing, Defendant promises testimony about speed and conditions of the Mountaineer that he says would disprove Carmody's observations.  Id.  Defendant's challenge is baseless. First, it lacks logical: if Carmody did not see Aponte, then the police would not known to approach the car to arrest Aponte, an occurrence Defendant concedes.  See Def. Aff. ¶¶ 4-7.

Second, under the circumstances, there was no real possibility of traveling at speeds that would have prevented

---

[3]Indeed, when the police have probable cause to believe that a car contains evidence of criminal activity, there is no requirement that police obtain a warrant to search it.  See Chambers v. Maroney, 399 U.S. 42, 44, 52 (1970)(police had probable cause to believe car contained evidence of robbery because car matched eyewitnesses' descriptions).  The so-called "automobile exception" to the warrant requirement stems from both the inherent mobility of cars, which often creates an exigency that makes obtaining a warrant impractical, and the reduced expectation of privacy due to the configuration, use and regulation of cars, generally.  See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)(per curiam).

Carmody from seeing Aponte. Carmody saw Aponte as the police and
the Mountaineer traveled on a portion of Laurel Street that is a
winding two-lane way through a dense cluster of multi-family
dwellings. It was a June evening and there were a number of
people around. Hence, it would have been reckless for the police
to travel at a high rate of speed.

Third, not only was the police car traveling slowly, the
Mountaineer was also. Indeed the occupants evidently had plans
to stop before the police even approached because when the
officers turned around to pull up behind the Mountaineer, it was
idle at the curb in front of 29 Laurel Street.

In sum, the facts recited in Carmody's affidavit show that
the police had reasonable suspicion, if not probable cause, to
stop the Mountaineer. The motion, insofar as it is based on the
initial stop of the Mountaineer, should be denied.

## B.   Defendant was lawfully ordered from the car and frisked.

Defendant claims that the officers lacked reasonable
suspicion to stop and frisk him and detain him while the officers
arrested Aponte. Defendant admits that he had interacted with
Aponte. But he claims that such interaction and/or the knowledge
of Defendant's criminal history or gang affiliation is
insufficient to justify police conduct in this case. This claim

8

is without merit.[4]  The police acted properly and prudently in ordering Defendant from the car and conducting a pat-down. Moreover, Defendant was not ordered detained until the recovery of drugs in the Mountaineer has provided police with probable cause believe the occupants of the Mountaineer committed a crime.

It is settled that the police officer may as a matter of course order the passengers of a lawfully stopped vehicle to exit the car pending completion of the stop. Maryland v. Wilson, 519 U.S. 408, 415 (1997).  In so holding, the Court in Wilson focused on the need for police safety when making a stop, the increased danger to police when there is more than one occupant in a car, and the de minimis intrusion of removing passengers from a car already stopped. Id. at 413-14.  As shown above, police lawfully stopped the Mountaineer in order to arrest Aponte. Accordingly, they were authorized for their safety to have Defendant leave the Mountaineer until Aponte could be taken into custody.

Under the circumstances, it was also proper for the police to conduct a brief pat-down of Defendant for weapons. A frisk may be conducted if the officer has a reasonable belief that the person poses a threat to the officer's safety of the safety of others. Terry v. Ohio, 392 U.S. at 27, 30.  Here, Carmody had

---

[4]    While the pat-down of Defendant was entirely reasonable under the circumstances, as shown below, no evidence or contraband was recovered and a decision on the reasonableness of the police conduct will not affect the evidence at trial.

9

participated in arresting Morales and was aware that Morales had
a history of arrests and convictions relating to weapons
possession and drug possession.  See United States v. Jackson,
300 F.3d 740, 746 (7ᵗʰ Cir. 2002)(frisk justified because police
previously arrested defendant for gun possession).  Carmody was
also aware that Morales was an admitted member of a gang, and
that this stop was occurring within the heart of the territory of
the gang.  Lastly, just moments before ordering Defendant from
the Mountaineer, Carmody saw furtive movements between Defendant
and Aponte, whom he had authority to arrest.  Under such
circumstances, the police were understandably concerned about
their safety and the safety of others in the vicinity of the stop
to take the precaution of frisking Defendant for weapons.
Indeed, it would be reckless to require the police, under the
circumstances, to forego this precaution.

     Finally, Defendant claims that following the pat-down he was
unlawfully detained.  This claim is factually and legally wrong.
A seizure which implicates the Fourth Amendment occurs only when
a reasonable person would not feel free to terminate an encounter
with police.  United States v. Drayton, 536 U.S. 194, 203 (2002)
(no seizure where police board bus, approach random passengers,
ask them questions, and request consent to search).  The
reasonable person test is objective and "presupposes an *innocent*
person."  Id. at 202 *quoting* Florida v. Bostick, 501 U.S. 429,

437-38 (1991)(emphasis original).   Moreover, the fact that a
person is not told that he is free to refuse to cooperate, does
not render the encounter a seizure.   Id. at 203.

Here, Defendant was not seized and a reasonable person would
have felt free to leave upon being ordered from the car.   Among
other things, the frisk of Defendant was brief; it was not a full
search, but to insure he was not armed.   After Defendant was
frisked for weapons, he was not treated like an arrestee: he was
not handcuffed; he was not guarded by an officer; he was not
Mirandized; he was not ordered to remain and he was not told that
he was under arrest.   Rather, after the pat-down, and the
recovery of no contraband – no gun, no ammunition, no drugs, in a
word nothing that would expose him to criminal charges or lead
him to believe he was under arrest – he was told to stand a
distance away.   While Defendant may not have been told he could
leave, that is owing to the fact that he was a passenger in a
car.   As a practical matter, Defendant was not in a position to
leave until the police arrested Aponte and released the
Mountaineer to Defendant and the driver.[5]   No reasonable person,
innocent of a crime, would believe they were not free to leave.

---

[5]     In fact it is unreasonable that police would tell occupants
of a car that was stopped that they were free to leave.   Having
chosen to travel by car, the occupants would ordinarily need a
car to leave and would have to wait until the car stop was
completed.   This was implicit in the observation in Wilson that
whether occupants wait outside the car rather than inside is a
small imposition – the point being they have to wait anyway.

11

Restrictions were placed Defendant at the scene, but that occurred only after the recovery of the crack cocaine. Then and only then was Defendant handcuffed, seated on the curb and advised that he was under arrest. These actions were supported by probable cause to believe that Defendant committed a crime.

The cases Defendant cites in support of suppression are inapposite. Defendant places great reliance on the fact that Wilson did not hold that a passenger could be detained pending the car stop; however, the limits of Wilson merely correspond to what facts were and were not before the Court: Wilson was the passenger in a car that had been stopped. When a trooper ordered Wilson from the car, crack cocaine fell to the ground and at that point Wilson was arrested. Wilson, 519 U.S. at 411.

Moreover, a fair reading of Wilson suggests that there may arise circumstances in which ordering a passenger detained is appropriate. Wilson expressly quoted a passage from Michigan v. Summers, 452 U.S. 692 (1981), which authorized the detention of a person while his residence was searched on the basis of the very same concerns that animated the holding in Wilson: the need for police to routinely exercise unquestioned command of a situation. While this Court need not decide whether the circumstances surrounding this car stop would have permitted the police to detain Defendant, it should be noted, it involved the situations present in both Wilson and Summers: a car stop and the execution

12

of a warrant.

The other cases Defendant cites are authority for law that isolated pieces of information, standing alone, did not create reasonable suspicion. Ybarra v. Illinois, 444 U.S. 85 (1970)(mere presence); United States v. Davis, 94 F.3d 1465 (10th Cir. 1996)(knowledge of criminal record); United States v. Daniel, 804 F.Supp. 1330 (D.Nev.1992)(gang affiliation and known arrest record). We fully agree with them. As the Court noted in Wilson, the touchstone of Fourth Amendment analysis is reasonableness of government conduct under all the circumstances. Wilson, 519 U.S. at 411. Here, ordering Morales from the car and conducting a pat-down to insure the safety of the officers and the public as the officers arrested Aponte was a reasonable intrusion on Defendant's Fourth Amendment rights. The motion to suppress should be denied.

## II.  The Motion to Suppress the Drugs Should Be Denied

Defendant moves to suppress the crack cocaine recovered from the Mountaineer. This motion should be denied without a hearing. Defendant has failed to show that the recovery violated a reasonable expectation of privacy belonging to him. Moreover, the seizure was proper.

A defendant has may challenge the admission of evidence only if defendant's own constitutional rights have been violated.

13

Rakas v. Illinois, 439 U.S. 128, 134 (1978). "The proponent of a
motion to suppress has the burden of establishing that his own
Fourth Amendment rights were violated by the challenged search or
seizure." Id. at 131 n.1. In this case then, Morales must
demonstrate that the search of the Mountaineer and seizure of
crack cocaine intruded upon some legitimate expectation of
privacy he had in either or both. Defendant has done neither.

Defendant concedes he was a passenger in the Mountaineer.
It is settled that a passenger does not an account of that status
alone have standing to challenge evidence found in a third
party's car. See Rakas, 439 U.S. at 150; United States v. Green,
275 F.3d 694, 699(8th Cir. 2001)(defendant lacked standing to
challenge admissibility of evidence found in third party's car in
which defendant was riding). Defendant fails to set forth some
other legitimate expectation of privacy. Having failed to do so,
this part of the motion can go no further. See United States v.
Bouffard, 917 F.2d 673, 676 (1st Cir. 1990) quoting United States
v. Cruz-Jimenez, 894 F.2d 1, 5 (1st Cir. 1990)(demonstration of
legitimate expectation of privacy is a threshold standing
requirement and analysis cannot proceed further without its
establishment).

However, even if Defendant could show that a legitimate
expectation of privacy belonging to him was violated by the
seizure of the crack, the claim would fail. First, it is settled

14

that when police make a lawful custodial arrest of the occupant of an automobile, they may, as a contemporaneous incident to that arrest, search the passenger compartment. New York v. Belton, 453 U.S. 545, 460 (1981). Here, the crack cocaine was found in the pocket of the passenger seat inside the Mountaineer upon the arrest of Aponte. Hence, the seizure was lawful.

In addition, the drugs were in plain view. When police removed Aponte from the back seat, Lopez saw in the pocket on the back of the front passenger seat a clear baggie, knotted at the top containing smaller bags of off-white rocks, and after reporting this fact to Carmody, seized the drugs. Clearly, the police were permitted and obligated to seize the drugs. There was no constitutional prohibition to doing so, under the circumstances. The motion should be denied without a hearing.

## III. **Defendant's Statements Were Voluntary**

After police recovered the crack cocaine, Defendant stated, "that shit is mine" (hereafter, the "First Statement"). At the police station, after being Mirandized, Defendant admitted that he owned the crack found in the Mountaineer. It appears Defendant moves to suppress the First Statement only.

As an initial matter, the motion should be denied because – perhaps betraying a lack of confidence in its merits – Defendant fails to state the grounds for suppression. Local Rule 7(b)

15

requires that a motion "shall state with particularity the grounds therefor." Defendant fails to brief this issue and the mere incantation: "Defendant ... moves to suppress any and all statements made by him during his unlawful detention," is plainly insufficient.

However, even if sufficient, the motion to suppress the First Statement, assuming that his the subject of the motion, should be denied. First, while it was custodial, the custody was not, as Defendant claims, unlawful. As shown above, Defendant was detained only after there was probable cause to arrest him based upon the seizure of the crack, and Defendant did not make the First Statement until after his arrest.

However, custody aside, the facts show that the First Statement was voluntary and not the product of interrogation or its equivalent. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). Indeed, it has been recognized that interrogation does not occur when a private citizen questions a suspect on his own initiative or induces the suspect to make a confession. See e.g. Arizona v. Mauro, 481 U.S. 520, 526 (1987)(wife induced defendant to make inculpatory statement); Whitehead v. Cowan, 263 F.3d 708, 717-29 (7th Cir. 2001) (no interrogation where acquaintance persuaded defendant to confess).

Applying these precedents, it is clear the First Statement was not the product of police interrogation or conduct. After

16

recovery of the crack, Defendant, Aponte and Andrews were
handcuffed and seated on the curb. At that time, Andrews, the
operator of the Mountaineer, began to protest saying, "Yo I am
not going to take this." In response, Defendant said, "that shit
is mine." Accordingly, the motion to suppress the First
Statement should be denied.[6]

## IV. Two Remaining Issues

In Defendant's motion to suppress are two ancillary issues
which we address briefly. First, Defendant claims that the
police procedures in this case violated his rights under Article
14 of the Massachusetts Declaration of Rights and the
Massachusetts Commonwealth. These claims are not properly
brought because the Court lacks jurisdiction to decide them.

The jurisdiction of all Article III courts is limited.
Article III, Section 2, Cl. 1 provides in relevant part:

> The judicial Power [of the United States] shall extend to
> all Cases in Law and Equity, arising under this
> Constitution, the Laws of the United States, and Treaties
> made, or which shall be made under their Authority . . .

Constitution, Article III, Section 2, Cl.1.

Defendant's claims that conduct of the police violated state

---

[6]    Insofar as the statement Defendant made at the precinct, we
attach to the Affidavit of Officer Carmody the materials we
provided in discovery to Defendant: a photocopy of the executed
Miranda warnings and Defendant's signed statement.   These
documents show that Defendant's post-arrest confession was the
product of a voluntary waiver of Defendant's rights.

law and the Constitution of the Commonwealth of Massachusetts do
not fall within the scope of this grant of authority.  Moreover,
Defendant has pointed to no authority that would suggest some
other basis for jurisdiction.  For these reasons, the state
claims should be dismissed with prejudice.

The second issue concerns the relief sought.  Defendant's
motion includes the reservation of the "right" to amend or
supplement the instant motion to suppress, based upon the
government's response, additional discovery and investigation, or
"as needed".  What right Defendant means is unclear; but on its
face, this part of the motion should be denied as unauthorized
and unfair.

Defendant cites no authority for the proposition that he has
a right to unilaterally amend or supplement.  To the contrary,
Local Rule 7.1(B)(2) prohibits the filing of additional motion
papers, except with leave of the Court.  Similarly, Fed. R. Crim.
P. 12(e) provides that motions not made are waived, unless the
Court, for good cause, grants relief from the waiver.

In addition, this reserved right creates unfairness.  It
poses an additional and unfair burden since an "amended" motion
presumably contemplates an "amended" response.  It also risks
introducing gamesmanship into motion practice: hypothetically, an
"amendment" could be tailored to fit the government's response
and yet assert some right or theory never contemplated by the

18

original motion.  To the extent Defendant's motion is to amend or supplement without leave of the Court, it should be denied.

## CONCLUSION

The Motion to Suppress should be denied without an
evidentiary hearing.

Respectfully submitted,

Michael J. Sullivan
United States Attorney

By:    _David Hennessy_
David Hennessy
Assistant U.S. Attorney

20

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

> Eduardo Masferrer
> Masferrer & Hurowitz, P.C.
> 6 Beacon Street
> Suite 720
> Boston, MA 02108

This 7th day of December, 2004.

David Hennessy
Assistant U.S. Attorney