UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ALEXIS MORALES, )<br>)<br>Defendant. ) | CRIMINAL NO. 04-40019-FDS |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**

The United States of America, through its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts and Assistant U.S. Attorneys David Hennessy and Paul G. Casey, files this response to Defendant's various pretrial motions styled "Defendant's Trial Brief," and "Motion In Limine Regarding Prior Bad Acts." The government also submits this memorandum in support of a supplemental motion *in limine* to preclude defendant from inquiring of witnesses whether in other instances, unrelated to this case, someone has given a false confession to exonerate a guilty party, and to preclude an offer of evidence, assuming it is true, that Aponte is a drug trafficker.

**1. Motion for a View Should be Denied**

Defendant moves for a jury view of the scene of Defendant's arrest for two reasons: first, to provide the jurors with evidence to test the credibility of Officer Carmody; and, second, as evidence in support of the already-decided motion to suppress.

Dealing with the second reason first, the request is plainly improper and untimely. As this Court noted in denying defendant's

first motion to re-open the suppression hearing:

> [Reopening a hearing is an] extraordinary [measure], and should not be undertaken unless the defendant's motion "brings forth 'significant, new factual matters' that are material'"

United States v. Morales, 04-40019-FDS (D.Mass. Apr. 15, 2005) (citations omitted). Defendant's Trial Brief is devoid of any such material matters showing good cause to reopen, or which otherwise satisfy the requisite showing for this extraordinary relief.

In addition, the government would be substantially prejudiced by re-opening the suppression hearing, conditionally or otherwise. The context for the view will be a jury trial; hence, jeopardy will have attached. If the Court were to re-consider and, based on the view, allow the motion to suppress, the government would not be able to appeal the decision. See 18 U.S.C. § 3731 (second paragraph)("an appeal by the United States shall lie . . . from a decision . . . suppressing or excluding evidence . . not made after the defendant has been put in jeopardy."). For this reason, a number of courts have determined that a motion to suppress made after a jury is sworn is untimely and improper. See United States v. Barletta, 644 F.2d 50, 54-55 (1st Cir. 1981)("Were a defendant able to delay [a motion to suppress based on the exclusionary rule] until trial, he could prevent the government from appealing, thus frustrating the central purpose of § 3731. It is for this reason that motions to suppress motions (sic) based on the exclusionary rule alone must be made by a defendant prior to trial or not at

all.").

Defendant's first reason for seeking a view fares no better. While we agree that permitting a jury view is committed to the discretion of the Court, see United States v. Crochiere, 129 F.3d 233, 236 (1st Cir. 1997), the factors that the Court may consider – the orderliness of trial, whether the jury would be confused, whether it would be time-consuming or logistically difficult – militate against a jury view here.

As an initial matter, we note that defendant claims to be undertaking this exercise to enable the jury to judge the credibility of Officer Carmody. We submit that there is sufficient information available, without the proposed view, to enable the jury to do so. Carmody has testified about defendant's arrest on three occasions: in the grand jury, at a detention hearing and at the suppression hearing, and defendant has been provided with copies of such testimony which he may use to cross-examine Carmody. Moreover, defendant has taken photographs and has noticed his intention to offer photographs with which he can examine Carmody. Third, defendant has noticed his intention to call Darron Andrews, the owner and operator of the Mountaineer, who presumably will testify about matters relating to the condition of the Mountaineer, such as window tint, speed, and the lighting conditions on June 7. Hence, where as here, "there is sufficient evidence describing the scene in the form of testimony, diagrams or photographs," the Court

is within its discretion in denying the motion. Id. at 236 (citing cases).

Further militating against a view are the logistics and time commitment, and the danger of confusion. To avoid the latter, Defendant would have to accurately re-create the conditions as they existed on June 7, 2004. Among other things, this would involve a jury viewing at 7:20 p.m., on Laurel Street. It would involve establishing that the weather, including cloud cover, and sources of natural and artificial light, were identical at both the view and time of arrest. As this Court noted in denying the motion to suppress, this would involve, "at a minimum, scientific or technical expert testimony that accounted for [such] variables." United States v. Morales, 04-40019-FDS at *14-15 (D.Mass. Feb. 22, 2005). Given that all this would be undertaken for the sole purpose of assisting the jury in evaluating Carmody's credibility, the motion should be denied.

### 2. Invocation of Fifth Amendment Privilege In The Presence of the Jury.

Defendant seeks to call Aponte at trial for the sole purpose of having Aponte invoke his right against self-incrimination in the presence of the jury. While the decision to permit calling a witness for this purpose is committed to the discretion of the Court, the Court should deny this application in this case.

It is settled that "in the absence of exceptional circumstances . . . trial courts should not permit witnesses who

4

have indicated that they will refuse to answer questions on legitimate Fifth Amendment grounds to take the witness stand and assert the privilege in front of the jury." United States v. Castro, 129 F.3d 226, 231 (1st Cir. 1997) *citing* Namet v. United States, 373 U.S. 179, 186 (1963) and United States v. Johnson, 488 F.2d 1206 (1st Cir. 1973). The rationale for disfavoring the invocation of this right before the jury is that the assertion of the Fifth Amendment right by a witness is an inherently ambiguous act, and invites the jury to make improper inferences. Namet, 373 U.S. at 186; Johnson, 488 F.2d at 1211 ("Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him."). Indeed, in Johnson, on which defendant relies, the Court of Appeals upheld the district court's ruling that defendant could not call the witness where his testimony would have been essentially invocation of the privilege.

Here, the general prohibition is particularly applicable. Aponte may have been handed the drugs by defendant and placed them in the seat pocket with the intent to return them to defendant. In such case, Aponte would have a Fifth Amendment privilege, and his invocation of that privilege would not exculpate defendant in any way, but rather show, as the police first believed when they arrested all the occupants of the Mountaineer, that the possession of the crack cocaine and liability for it were joint. Thus,

Aponte's invocation of the right would be particularly ambiguous, and should be disallowed.

### 3. Aponte's Conviction and Prior Bad Acts are Inadmissible

Defendant moves to offer evidence of Aponte's prior narcotics conviction and prior bad acts. This motion should be denied.

It is established that "mere propensity evidence is never admissible solely to show a character inclined toward unlawful behavior." United States v. DeCicco, 370 F.3d 206, 210 (1st Cir. 2004); Fed. R. Evid. 404(b). Defendant has not shown how Aponte's prior conviction and prior bad acts have the requisite "special relevance" to overcome the prohibition against propensity evidence. See DeCicco, 370 F.3d at 210. Indeed, defendant makes an undisguised propensity argument to support the admission of this evidence. He states: "Use of prior convictions and bad acts to demonstrate Mr. Aponte's possession of the controlled substance located in the car." See Def.'s Trial Brief, p. 3.

However, even if defendant could show that Aponte's prior conviction had some "special relevance," the danger of unfair prejudice far outweighs its probative value. See Fed. R. Evid. 401 and 403. Describing such evidence as "reverse 404(b) evidence," the Sixth Circuit, in a case on point, rejected such evidence finding that "evidence of [the witness's] prior conviction would have been prejudicial to fair consideration in that it would have made it easier for the jury to lay the blame on [the witness] for

6

the drug deal, despite evidence presented at trial." United States v. Lucas, 357 F.3d 599, 606 (6th Cir. 2004); see also United States v. Della Rose, 403 F.3d 891, 901 (7th Cir. 2005)(trial court is entitled to exclude "reverse 404(b) evidence" if balancing of probative value against prejudice, confusion of issues and waste of time indicates it is not beneficial); United States v. Bowman, 215 F.3d 951, 962 (9th Cir. 2000)(other crimes evidence of third party culpability may be excluded if insufficiently probative in light of its prejudice under Rule 403).[1]

This case too presents the same danger that the jury might not give fair consideration to all the evidence, but rather acquit defendant on the basis of evidence of Aponte's prior conviction and bad acts. Such evidence is particularly misleading where, as here, defendant has also been convicted of drug trafficking. In the end, admission of "reverse 404(b) evidence" will seriously jeopardize the ability of the jury to give fair consideration to all the evidence.

**4. Gang Membership and Prior Conviction**

The government does not intend on its case-in-chief to present evidence of defendant's admission to being a member of PVE gang, or

---

[1] Defendant also claims that exclusion of this evidence will interfere with his right to prosecute his defense. However, as the Sixth Circuit noted in Lucas, "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." 357 F.3d at 606 (citations omitted).

7

that he was convicted of possession of marijuana or possession of a firearm without an FID card. However, if defendant opens the door to the admission of this evidence, the government may move the admission of such evidence. For instance, if defendant suggests that he was ignorant of the criminal justice system and the bail process, or denies that he expected to be bailed following his arrest on June 7, 2004, the government would seek to prove defendant's bail history. Similarly, Defendant's gang affiliation is relevant to whether defendant would permit others to be arrested for an offense that defendant himself committed because it would involve a loss of face by defendant, and trust among gang members and affect defendant's status in the gang.

In any case, should defendant testify, he places his credibility in issue, and the scope of his cross-examination is very broad. See Brown v. United States, 356 U.S. 148 (1958) (if a criminal defendant takes the stand and testifies in his own defense, "his credibility may be impeached and his testimony assailed like that of any other witness."); United States v. Lara, 181 F.3d 183, 199 (1st Cir. 1999)(proper on cross examination of defendant to delve into matters beyond direct which "bear on the witness's credibility."). The government would seek to inquire about defendant's gang affiliation and criminal record because those matters bear on defendant's credibility and affect the jury's ability to assess defendant's testimony.

8

### 5. Hearsay Objection

Defendant has indicated on a draft Exhibit list his intention to offer at trial greeting cards from Aponte. Such correspondence is inadmissible hearsay. <u>See</u> Fed. R. Evid. 801.

### 6. Supplemental Motion in Limine

The government moves to prohibit defendant from asking any witness whether in other instances, unrelated to this case, someone has given a false confession to exonerate a guilty party. Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Without evidence to suggest a pattern or link between instances of so-called false confessions and this case, such testimony is plainly irrelevant. "Transactions between third persons are generally inadmissible, unless there is some relationship between them and the defendant which serves to connect him with or make him liable for their conduct. Generally, conduct of third parties is not admissible as establishing a standard to determine whether the defendant's conduct was improper." <u>United States v. Eckmann</u>, 656 F.2d 308, 313 (8th Cir. 1981) *quoting* 1 Wharton's Criminal Evidence, § 163, at 299-300 (13th ed. 1972) (in prosecution for receiving stolen merchandise, evidence that others were alerted to unusual terms and suspicious that merchandise stolen, not relevant to defendant's state of mind). Accordingly, inquiry into other

9

instances of false confessions should be precluded.

## Conclusion

For the foregoing reasons, the government respectfully requests that this Court preclude the testimony described above.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ David Hennessy
David Hennessy
Paul G. Casey
Assistant U.S. Attorneys


## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon counsel of record, Eduardo Masferrer, Esq., a copy of the foregoing document by facsimile.

This 2nd day of June, 2005.

/s/ David Hennessy
David Hennessy
Assistant U.S. Attorney

10