UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 04-40019-FDS |
| v. ) | |
| ) | |
| ALEXIS MORALES, ) | |
| ) | |
| Defendant. ) | |

### GOVERNMENT'S MOTION TO STRIKE SURPLUSAGE AND FOR ALTERNATIVE RELIEF

The United States of America, through the undersigned attorneys, moves to strike as surplusage the allegation in the indictment that the cocaine base was "also known as crack," and the citation to the U.S. Sentencing Guidelines. In the alternative, the government requests that the Court use the attach verdict form and charge the jury on what crack cocaine is, in accordance with the supplemental request to charge submitted herewith.

**A.   The Court Can Strike Language From An Indictment Without Violating Defendant's Right To Indictment By Grand Jury**

The Fifth Amendment of the Constitution provides that "[n]o person shall be held to answer for a[n] ... infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Constitution, Amend. V. Thus, it has been said that the federal courts adhere to the historic rule that an indictment may not be amended without the consent of the defendant. 1 Wright, Federal Practice and Procedure: Criminal 3rd, §127, p.620 (1999). This does not mean, however, that a court cannot strike unnecessary language

from an indictment, without violating the Fifth Amendment.

In <u>United States v. Miller</u>, 471 U.S. 130 (1985) the issue presented was:

> Whether the Fifth Amendment's grand jury guarantee is violated when a defendant is tried under an indictment that alleges a certain fraudulent scheme but is convicted based on proof that supports only a significantly narrower and more limited, though included, fraudulent scheme.

<u>Id</u>. at 131 (footnote omitted). The indictment in <u>Miller</u> alleged the defendant had defrauded his insurer both by consenting in advance of the burglary of his place of business and by lying to the insurer about the value of his loss. <u>Id</u>. at 131-32. The trial proof related only to the falsely inflated loss claim, however, and the Government moved to strike that part of the indictment which alleged prior knowledge of the burglary. <u>Id</u>. at 132-33. The defendant objected to the motion to strike, the entire indictment was sent to the jury and upon conviction the defendant appealed on the ground that the trial proof fatally varied from the scheme alleged in the indictment. <u>Id</u>. at 133-34. The Court of Appeals vacated the convictions, finding that the defendant's right to be tried only on charges found by a grand jury had been violated, stating "the grand jury may well have declined to indict Miller simply on the basis of his exaggeration of the amount of his claimed loss." <u>Id</u>. at 134.

The Supreme Court reversed the Court of Appeals, reinstating the convictions. <u>Id</u>. at 145. The Court reasoned that the "notice"

related concerns underlying the Fifth Amendment's grand jury guarantee were not implicated, since the indictment clearly put the defendant on notice that he had to defend the allegation he had fraudulently inflated his claim of loss. The Court distinguished Stirone v. United States, 361 U.S. 212 (1960), on which the Court of Appeals had relied, stating that in Stirone the trial evidence and instructions had broadened the possible basis for conviction, whereas in the instant case the charges had been narrowed. Id. at 138-39.

The Court then reconsidered Ex Parte Bain, 121 U.S. 1 (1887), which held it was an unconstitutional amendment of an indictment to delete allegations which were not necessary to prove the offense. In Bain, the indictment alleged the defendant, a bank cashier, had included false statements in a report required to be made to the Comptroller of the Currency, with intent to deceive the Comptroller of the Currency and the agent appointed to examine the affairs of the bank. Id. at 3-4. The statute upon which the indictment was based made it a crime to include a false statement in such report with intent to deceive any agent appointed to examine the affairs of the bank. Id. at 3. Thus, under the language of the statute, there was no need to charge Bain with intending to deceive the Comptroller of the Currency. Miller, 471 U.S. at 141. The trial court in Bain had granted the Government's motion to strike from the indictment the reference to intending to deceive the

So likewise here, striking the language "also known as crack" from the indictment, will add nothing new to the grand jury's indictment and will not constitute a broadening of the indictment. Indeed, in an unreported decision, the District of Puerto Rico noted that the reference to crack in an indictment, presented in a parenthetical following the words "cocaine base" was "mere surplusage." United States v. Nieves-Ramos, 2002 WL 662134 at *2 (D.P.R. March 8, 2002)(Hornby, C.J.)(a copy of which is annexed hereto). That is because the statute under which defendant is charged criminalizes possession with intent to distribute cocaine base, not crack. See 21 U.S.C. § 841; United States v. Lewis, 40 F.3d 1325, 1346 (1st Cir. 1994)(motion to strike cocaine base denied because "cocaine base was an essential element of the government's case"); Miller, 471 U.S. at 136 (Convictions have been generally sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment. A part of the indictment unnecessary to and independent from the allegations of the offense proved may normally be treated as 'useless averment' that 'may be ignored.'")(citation omitted).

The First Circuit, in United States v. Ochs, 842 F.2d 515 (1st Cir. 1988), *appeal after remand,* United States v. Dray, 901 F.2d 1132 (1st Cir), *cert. denied*, 498 U.S. 895 (1990), upheld the striking of language from an indictment based on Miller. In Ochs

5

the indictment alleged a conspiracy involving three separate frauds, including one to deprive the City of Boston and its citizens of their right to have the affairs of the city conducted honestly, impartially, and free from corruption, fraud and undue favoritism. Id. at 519. The First Circuit reversed the convictions in Ochs, based on the Supreme Court's then-recent decision on McNally v. United States, 483 U.S. 350 (1987), which rejected the intangible rights theory of mail fraud. When one of the defendants, Dray, sought to dismiss the indictment, arguing that after McNally the intangible rights portion of the indictment was invalid, and therefore the indictment failed to charge an offense, the Court rejected the argument relying on Miller, stating:

> if we ignore the separate ill-fated intangible rights allegations, we are left with a conspiracy count still properly alleging two schemes to defraud in violation of section 1341. *** Assuming that the improper subparagraph is stricken, we see no defect in the indictment such that Ochs and Dray cannot be retried and, if the jury so decides, convicted.

842 F.2d 527-28. In this case, if the "also known as crack" language (and corresponding citation to the U.S. Sentencing Guidelines) is stricken, the indictment will still properly allege the narcotics offense found by the grand jury and criminalized by the statute cited in the indictment, possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841. There is no prejudice to the defendant here because crack is a subset of

6

cocaine base, and therefore the grand jury would have necessarily had to find possession of cocaine base, in order to find possession of crack. In other words, the grand jury would have returned the indictment even without the language the government moves to strike.

### B. Verdict Form

In the alternative, the government asks that the verdict form permit the jury to convict so long as it finds, beyond a reasonable doubt, that defendant possessed cocaine base with intent to distribute, regardless of whether the cocaine base was in the form of "crack."

As noted above, 21 U.S.C. § 841(a)(1), the charged offense, criminalizes possession with intent to distribute cocaine base, not crack cocaine. Whether the substance is "crack" is not an element of the offense, but is akin to the issue of whether the government has proved the quantity, an issue for the Court at sentencing.

Alternatively, to the extent the Court is treating crack cocaine as a subset of cocaine base - to use the Court's analogy, "a rectangle that is a square" -- then government requests under the rubric of lesser included offenses, that the Court submit to the jury the offense of possession of cocaine base with intent to distribute, pursuant to Fed. R. Crim. P. 31(c).

Rule 31(c) provides in relevant part, that "a defendant may be found guilty of . . . an offense necessarily included in the

7

offense charged." It is clear that defendant cannot commit the crime of possessing crack with intent to distribute without committing the crime of possessing cocaine base with intent to distribute. Indeed, assuming *arguendo* that crack cocaine is a "subset" of cocaine base, possession of cocaine base with intent to distribute is necessarily a lesser included offense and, pursuant to Rule 31, should be charged and submitted to the jury.

### C. Request to charge

The government requests, pursuant to Fed. R. Crim. P. 30, that the Court, give the following supplemental instruction to the jury:

"Crack" is a street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

Chemical analysis cannot establish a substance as crack because crack is chemically identical to other forms of cocaine base, although it can reveal the presence of sodium bicarbonate, which is usually used in processing crack. Lay opinion testimony suffices to prove that a substance is crack.

Adapted from U.S.S.G. § 2D1.1, Note D; United States v. Richardson, 225 F.3d 46, 50 (1st Cir. 2000).

8

## Conclusion

For all the foregoing reasons, the government requests that the Court grant the motion to strike, or in the alternative, submit to the jury whether the government has proved possession of cocaine base with intent to distribute, and charge the jury regarding the definition of crack.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ David Hennessy
David Hennessy
Paul G. Casey
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon counsel of record, Eduardo Masferrer, Esq., a copy of the foregoing document by hand.

This 8th day of June, 2005.

/s/ David Hennessy
David Hennessy
Assistant U.S. Attorney

9

```
             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

UNITED STATES OF AMERICA    )
                            )
        v.                  )    04 CR 40019-FDS
                            )
ALEXIS MORALES,             )
                            )
        Defendant.          )

## VERDICT FORM

WE, THE JURY, FIND THE DEFENDANT:

**As to Count One** (possession with intent to distribute a quantity of cocaine base)

           _____ Guilty         _____ Not Guilty

If your vote is Guilty, you should answer the following two questions. If your vote was Not Guilty, do not answer.

1. Was the amount of cocaine base involved in the offense 20 grams or more?

           _____ Yes            _____ No

2. Was the cocaine base in the form of crack cocaine?

           _____ Yes            _____ No

**Your deliberations are complete. Please notify the Marshal in writing.**

FOREPERSON: _____    DATE: _____

Westlaw.

Not Reported in F.Supp.2d

2002 WL 662134 (D.Puerto Rico)

**(Cite as: 2002 WL 662134 (D.Puerto Rico))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Puerto Rico.
UNITED STATES OF AMERICA
v.
Jose NIEVES-RAMOS # 1 Eduardo Osorio-Rojas # 2, Defendants
**No. CRIM. 01-44(DRD).**

March 8, 2002.

ORDER

HORNBY, Chief J.

*1 On Wednesday, March 6, 2002, I conducted a conference of counsel in this case. In the course of discussions concerning witness availability, specifically the defendants' chemistry expert, I learned that both the Government's expert chemist and the defendants' expert chemist will testify that the substance in question is cocaine base. At this point the Government does not expect to have its chemist testify that the substance is also crack, but the defendants expect to have their chemist testify that although it is cocaine base, it is not crack. The defendants maintain that the Government has the burden of proving to the jury beyond a reasonable doubt that the substance is crack. They have two reasons: that after *Apprendi v. New Jersey,* 530 U.S. 466 (2000), it is a jury issue; and because the Indictment refers to crack. The lawyers referred me to a number of First Circuit cases, and I have consulted additional cases. As a result, I now ORDER:

1. Neither expert chemist will be permitted to testify that the substance (which the parties agree is cocaine base) is or is not crack. The First Circuit has said on a number of occasions that the designation of cocaine base as crack is not a matter for expert chemist testimony:
   Chemical analysis cannot establish that a substance is crack ... because crack is chemically identical to other forms of cocaine base, although it can reveal the presence of sodium bicarbonate, which is usually used in processing crack. Lay opinion testimony suffices to prove that a substance is crack.
*United States v. Richardson,* 225 F.3d 46, 50 (1st Cir.2000) (internal citations omitted).
   [T]he government could bridge the evidentiary gap between cocaine base and crack cocaine by presenting lay opinion evidence (or an opinion proffered by an expert who possessed practical as opposed to academic credentials) from a "reliable witness who possesses specialized knowledge" (gained, say, by experience in dealing with crack or familiarity with its appearance and texture).
*United States v. Martinez,* 144 F.3d 189, 190 (1st Cir.1998).
   Chemical analysis cannot distinguish crack from any other form of cocaine base because crack and all other forms of cocaine base are identical at the molecular level. Thus, no further scientific testimony would have been of any conceivable assistance....
*United States v. Robinson,* 144 F.3d 104, 109 (1st Cir.1998).

2. It is not necessary for the jury to find that the cocaine base is also crack.
   A. *Apprendi* does not require such a determination. All the statutory penalties are based on the substance being cocaine base; the statute simply does not use the term crack. *See* 21 U.S.C. § 841. That term appears in the Guidelines. *See Richardson,* 225 F.3d at 49-50 (drawing the distinction between what the statute requires and Guideline definitions). But Guideline determinations are for the court by a preponderance of the evidence. According to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2

2002 WL 662134 (D.Puerto Rico)

**(Cite as: 2002 WL 662134 (D.Puerto Rico))**

First Circuit:
*2 Whether a particular substance is crack or cocaine for purposes of the sentencing guidelines is a question of fact to be determined by the court. When the nature of an illicit substance is material at sentencing, the government has the burden to prove the substance's identity, but its proof need only be by a preponderance of the evidence.
*Robinson,* 144 F.3d at 109 (internal citations omitted).
B. The wording of the Indictment does not require such a determination. The reference to crack is mere surplusage; indeed, the term even appears in parentheses. The Indictment refers to possession and conspiracy of a specific quantity of: "cocaine base ('crack' cocaine), a Schedule II Narcotic Drug Controlled Substance." As I have already said, crack is not even a statutory term. It is therefore not an essential element of the Government's case.

3. I do not now determine whether someone other than a chemist, such as a DEA agent, will be permitted to testify that this cocaine base is in fact crack. That is a relevance determination to be made at trial. (Obviously participants in the alleged conspiracy can testify that they thought they were selling or buying crack.)

For these reasons, the availability of the chemists is not critical to the scheduling of the case for trial. (Indeed, since the experts appear to be in agreement on the only question about which they can testify, the lawyers may reasonably decide that they should simply stipulate that the substance is cocaine base, thereby saving time and money.)

Accordingly this case will remain on the trial list for March 18, 2002. The Government expects two days for trial.

SO ORDERED.

2002 WL 662134 (D.Puerto Rico)

**Motions, Pleadings and Filings (Back to top)**

• 3:01CR00044 (Docket)
(Feb. 07, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.