UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.    )<br>)<br>ALEXIS MORALES    ) | CRIMINAL NO. 04-40019-FDS |

**MOTION FOR JUDGEMENT OF AQUITTAL**

Now comes the defendant in the above entitled matter and moves this court pursuant to Fed. R. Crim. Pro. Rule 29, to enter finding of not guilty. As grounds thereof, the Defendant would assert that the Government has failed to demonstrate sufficient facts to demonstrate all of the elements of the charged offense. Specifically the Government has failed to present sufficient evidence of a rational fact finder to determine that the Defendant possessed a Controlled substance with intent to distribute, *United States v. Latham*, 874 F.2d 852 (1st Cir. 1989), and that the substance was in fact "crack cocaine." United States v. Richardson, 225 F.3d 46, 50 (1st Cir. 2000).

I.    **THE GOVERNMENT HAS NOT DEMONSTRATED THAT THE DEFENDANT HAD THE REQUISITE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE.**

The Government bears the burden of establishing sufficient evidence to demonstrate the Defendant's intent. It has failed to introduce sufficient facts to demonstrate the intent to distribute. The government has offered only that (1) the Cocaine weighed a little over 27 grams, (2) that it was packaged in 7 different twists, (3) the street value of the cocaine, and (4) that there were no items within the car which would assist in smoking the cocaine. As a matter of law, this is insufficient to demonstrate that the Defendant had an intent to distribute the cocaine. *Latham*, 874, F.2d at 862-863. (

Possession of little less than an ounce (28 grams) is insufficient to demonstrate an intent to distribute.); United States v. Ford, 22 F.3d 374, 382 (1st Cir. 1994). To demonstrate sufficient evidence of the Defendant's intent, the Government is permitted to introduce circumstantial evidence. *Id.* However, the evidence needs to affirmatively point to a specific intent on the part of the accused. *Id.* Thus the Court has found where the Government demonstrates that he Defendant has an unusually high quantity of the Controlled substance, the intent can be inferred. *Latham*, 874 F.2d at 862. The Court has found that where the Government introduces that the Defendant had tools of the trade with him, that the intent can be inferred. *United States v. Bergodere*, 40 F.3d 512, 518 (1st Cir. 1994) (Total value of heroin was $1500, and gun and drug packaging material was found). And lastly, where the Government, usually through expert opinion, introduces affirmative evidence that the quantity of the substance is (1) not consistent with personal use, or (2) is consistent with distribution, the Court has found that this will suffice. *United States v. Andrade*, 94 F.3d 9, 13 (Testimony that amount was inconsistent with personal use, along with street value of drugs, lack of personal use paraphernalia in home and explanation of user habits sufficient to show intent); *United States v. Valle*, 72 F.3d 210, (1st Cir. 1995) (Agent testified that amount was consistent with distribution and not with personal use).

In the case at bar, the government did not offer any of these pieces of additional evidence. There was no evidence that ht quantity was an unusually high amount of cocaine, that the defendant had any "tools of the trade," and no opinion testimony was offered regarding the amount being either consistent with distribution or inconsistent with personal use. The fact that no tools for personal use were found in the car, merely

indicates that the occupants were not going to be ingesting the cocaine in the car. IT is not affirmative evidence of the Defendant's intent.

## II. THE GOVERNMENT HAS NOT DEMONSTRATED THAT THE SUBSTANCE WAS "CRACK COCAINE" AND NOT SOME OTHER TYPE OF COCAINE BASE.

The government was unable to demonstrate through their witnesses that the substance in question was crack cocaine. Crack cocaine, as the chemist testified, is one subset of cocaine base. Cocaine base is a broad term used to define the substance that remains once the base of powder cocaine is separated from the hydrochloride (HCl) that with the base makes up the compound. Crack cocaine, specifically, is the cocaine base that remains when sodium bicarbonate, more commonly known as baking soda, is the agent that is used to separate the base from the HCl. While 21 U.S.C. §841 does not distinguish between crack cocaine and powder cocaine, Note (d) to the drug quantity table found in U.S.S.G. 2D1.1. specifies that "'Cocaine base,' for the purposes of this guideline, means 'crack.'"

The chemist testified that the first four tests that she performed were tests designed to tell her whether a substance that she had been given was cocaine as opposed to another type of drug or some legal substance. These first four tests came back positive. The substance that she was dealing with was cocaine in some form. The federal statute requires that a further distinction be made, however, so one month after the initial tests the chemist retested the substance to determine whether it was some form of cocaine base or cocaine. The chemist performed two additional tests on the substance: the Spot Test and a test utilizing infrared light that she referred to using the abbreviation FTIR Test. The FTIR test revealed that the substance was cocaine base because the pattern that

the infrared light made when it refracted off of the substance in question matched with the pattern of a cocaine base standard. The Spot Test revealed that the substance was cocaine base because there was no immediate "blue flash" reaction when the coloring agent Cobalt Blue was added to the sample. The "blue flash" reaction occurs immediately upon introducing the color agent to the sample if the sample is powder cocaine because of the abundance of acid in that compound in the form of HCl. In this case, there was no "blue flash" reaction, but parts of the substance did turn blue after a period of time indicating that there were acid components remaining in the compound.

At this time the chemist made her second drug certification indicating that the cocaine substance was "cocaine base, freebase form." Freebase, like crack cocaine, is another form of cocaine base. Freebase resembles crack cocaine in its shape, coloring and texture, but an important difference lies in the way the base has been freed from the HCl component of the powder cocaine compound. While crack cocaine is formed using baking soda in the cooking process, freebase is formed by using a combination of different agents such as ammonia or ether. The chemist testified that when the crack cocaine reaction occurs, remaining acids in the compound are eliminated by the introduction of the baking soda, a strong base. On the other hand, it is not uncommon for acid components to be left behind in freebase because the separating agents that are used are more acidic. After receiving this second drug certification, A.U.S.A. Hennessey requested a third drug certification be written dropping the phrase "freebase form" so that the certification would only give the finding that the substance was "cocaine base."

The blue reaction during the spot test makes this case very different from *United States v. Richardson*, where lay opinion was sufficient to prove that a substance was

crack where the chemist's testimony was that her findings suggested that the cocaine base was crack cocaine. In that case, the chemist was able to testify first, that she had never found any of the substances to react like cocaine-HCl and secondly, that the substance was likely to be crack because of the presence in some of the samples of sodium bicarbonate. 225 F.3d 46, 50 (1st Cir. 2000). Here the scientific evidence weighs in the opposite direction because it shows that the cocaine being tested is freebase. The Spot Test showed the presence of remaining HCl and sodium bicarbonate was not found to be present. This is very unlike the situation where there was an "utter absence of evidence that the substance was anything other than crack cocaine" before the Court. *Id*. Thus in the case at bar, there is evidence before the court that the substance in question is a form of cocaine base, but that it is not crack cocaine. *See United States v. James*, 78 F.3d 851, 858 (3rd Cir. 1996); *United States v. Munoz-Realpe*, 21 F.3d 375, 377-78 (11th Cir. 1994) (both cases finding that the defendant should be sentenced according to cocaine as opposed to cocaine base guidelines where the government failed to prove by a preponderance of the evidence that the substance was crack cocaine).

While both officers testified that the substance they recovered appeared to be crack cocaine, the Chemist established that the two substance appear the same: both are hard rock like substances which form from adding a combination of ingredients to power cocaine. Thus the officer's testimony does not provide any additional evidence to over come the Chemist's initial finding that it was freebase cocaine, nor does it overcome the Chemist's finding that HCL was found in the substance analyzed.

## CONCLUSION

For the foregoing reasons, the Defendant motion for acquittal should be allowed.

ALEXIS MORALES
By His Attorney:

_____
Eduardo Masferrer
B.B.O. #644623
Masferrer & Hurowitz, P.C.
6 Beacon Street, Suite 720
Boston, MA 02108

Tel: 617-531-0135

## CERTIFICATE OF SERVICE

I, Eduardo Masferrer, certify that a true copy of this document was served on Assistant U.S. Attorney David Hennessey by delivery on June 8, 2005.

_____
Eduardo Masferrer